UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SHEILA O.,

               Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

              Defendant.

CASE NO. 3:18-cv-5694 JRC

ORDER ON PLAINTIFF'S
COMPLAINT

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local

Magistrate Judge Rule MJR 13. *See also* Notice of Initial Assignment to a U.S. Magistrate Judge

and Consent Form, Dkt. 2; Consent to Proceed Before a United States Magistrate Judge, Dkt. 3.

This matter has been fully briefed. *See* Dkts. 13, 14, 15.

      Plaintiff alleges that the ALJ erred in weighing ten medical source opinions. For several

of the opinions, plaintiff does not state legal arguments or support his allegations with evidence.

Nevertheless, the Court has endeavored to evaluate these opinions for possible legal error and

substantial evidence.  After considering and reviewing the record, the Court concludes that the

ALJ's decision is based on substantial evidence and free from legal error. Accordingly, this matter is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

<u>PROCEDURAL HISTORY</u>

Plaintiff's application for Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act was denied initially and following reconsideration. *See* AR. 75, 89. Plaintiff's requested hearing was held before Administrative Law Judge David Johnson ("the ALJ") on October 12, 2017. AR. 561. On April 20, 2018 the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act. AR. 530.

This case has previously been remanded by the district court. Following remand and after the latest adverse ALJ decision, plaintiff chose not to file exceptions with the Appeals Council, making the ALJ decision the final decision on the 61st day after the decision was issued. AR. 531; *see* 20 C.F.R. § 416.1484. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in August 2018. Dkt. 1. Defendant filed the sealed administrative record regarding this matter ("AR.") on January 18, 2019. Dkt 9.

<u>BACKGROUND</u>

Plaintiff, Sheila O., was born in 1973 and was 37 years old on the alleged disability onset date of September 30, 2010. *See* AR. 76. Plaintiff has a GED and work history in the fast food industry and working for a fish packing company. AR. 192. Plaintiff stopped working because of her conditions. AR. 191.

Plaintiff filed her application alleging both physical and mental impairments. AR. 191. According to the ALJ, plaintiff has at least the severe impairments of "chronic low back pain as caused by a combination of lumbar degenerative disc disease with right-sided L5-S1 facetogenic pain and morbid obesity; dysthymic disorder; somatic symptom disorder; right knee patellofemoral syndrome; headaches; hypothyroidism; diffuse myalgias; posttraumatic stress disorder; personality disorder; chronic pain syndrome[.]" AR. 536.

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

DISCUSSION

In plaintiff's opening brief, plaintiff raises the following issues: (1) Whether the ALJ's refusal to reopen plaintiff's prior determinations violated Social Security regulations; (2) Whether the ALJ properly evaluated the medical evidence; (3) Whether the ALJ properly evaluated plaintiff's testimony; (4) Whether the ALJ properly assessed plaintiff's residual functional capacity leading to erroneous RFC and step-five findings; and (5) Whether this case should be remanded for an award of benefits. *See* Dkt. 13, p. 2.

**I.      Reopening a Prior Determination**

Plaintiff asserts that the ALJ erred by not reopening plaintiff's prior file. Dkt. 13, p. 3. When a claimant has been denied benefits at the initial and reconsideration level, a request for a

hearing should be made within sixty days. *See* 20 C.F.R. §§ 416.1433(b); 416.1407.

Additionally, 20 C.F.R. § 416.1488(a), (b) allow a Title XVI determination to be reopened "[w]ithin 12 moths of the date of the notice of the initial determination, for any reason;" or "[w]ithin four years of the date of the notice of the initial determination if we find good cause, as defined in §416.1489, to reopen the case." The Social Security Administration will find good cause to reopen a determination or decision if, *inter alia,* "[n]ew and material evidence is furnished[.]" 20 C.F.R. § 416.1489 (a)(1); *see also* HALLEX I-3-9-40(B). Evidence is new and material when the evidence: (1) was not part of the claim as of the date of the determination; (2) relates to the period on or before the date of the determination; and (3) would have resulted in a different determination if the evidence had been available at the time of the determination. HALLEX I-3-9-40(C); *see also Moore v. Apfel,* 216 F.3d 864, 868 (9th Cir. 2000) ("HALLEX is strictly an internal guidance tool, providing policy and procedural guidelines to ALJs").

Generally, the Administration's determination regarding whether or not to reopen a claim is not subject to judicial review unless the plaintiff raises a "colorable constitutional claim of due process violation that implicates a due process right . . . to be heard or to seek reconsideration[.]" *Dexter v. Colvin*, 731 F.3d 977, 980, (9th Cir. 2013)(quoting *Klem v. Astrue,* 543 F.3d 1139, 1144 (9th Cir. 2008)); *see also Matlock v. Sullivan,* 908 F.2d 492, 494 (9th Cir. 1990); *Taylor v. Heckler,* 765 F. 2d 872, 876-77 (9th Cir. 1985). The Ninth Circuit stated in *Dexter* that "when the Commissioner promulgates regulations explaining what circumstances may constitute good cause and an applicant relies on one or more of them . . . [,] some explanation is required of why the applicant's potentially valid reasons for good cause are rejected." 731 F.3d at 981. Here, the Commissioner has promulgated a regulation stating that a prior Title XVI application may be

reopened within a year for any reason and within four years if the claimant produces new and material evidence. 20 C.F.R. § 416.1489(a)(1).

In discussing whether or not there was a basis to reopen plaintiff's prior file, the ALJ stated that although plaintiff's representative presented additional evidence, he "carefully considered all evidence, even evidence received after the initial hearing decision was issued in 2014, and finds that although voluminous records were received, most of these records are duplicative and the remaining records are not material." AR. 534.

The ALJ thoroughly addressed the reopening issue in the first ALJ decision, which was remanded on other grounds, stating:

> At the hearing, the claimant's representative suggested that the record contained new and material evidence, which warranted reopening the claimant's prior application. [Citation omitted]. However, those treatment notes indicate that the claimant was uninterested in treatment, and that her application for disability benefits was actually an impediment to behavioral progress. [Citation omitted]. This is not evidence that indicates the claimant's condition was more limiting than previously thought, thus is not material and is not good cause to reopen the prior application. Because the current application was protectively filed within one year of the prior denials, good cause is not necessary and any reason will suffice to reopen the prior determination. However, there is no reason to reopen apparent. No reason other than consideration of 15F was advanced. That record appears to bolster the prior determination, not provide a reason to question it. Independent review of the record does not reveal any other reason to reopen the prior determination.

AR. 17. In discussing whether reopening was appropriate in *Dexter,* the court clarified that "[the claimant was] *not* entitled to judicial review of the *merits* of the ALJ's good-cause decision, she was entitled to seek administrative review of that decision with the Appeals Council." *Dexter*, 731 F.3d at 981 (emphasis added).

This principle is applicable in the instant case. This Court is not reviewing the merits of the ALJ's assertion that he did not find good cause to reopen the claim, only whether or not the Appeals Council had enough information to review the ALJ's decision not to reopen the claim.

The ALJ thoroughly explained his decision not to reopen and noted that the new evidence actually served to reinforce the prior determination denying plaintiff's claim. AR. 17. Moreover, plaintiff's representative did raise this issue before the Appeals Council, which denied review of plaintiff's claim. AR. 6-7, 273. Therefore, the Court finds no colorable constitutional claim to examine whether the claim should be reopened. *Dexter*, 731 F.3d at 980.

## II. Medical Evidence

Plaintiff alleges that the ALJ erred in his evaluation of the following medical source opinions: Dr. Krueger; Dr. Lewis; Dr. Weiss; Dr. Normoyle; Dr. Carter; Dr. Wheeler; Dr. Sylwester; Nurses Lucas and Hamlin; and Dr. Leinenbach.

The ALJ is responsible for evaluating a claimant's testimony and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and evaluating a claimant's testimony lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (quoting *Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (citing *Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).

When a treating or examining physician's opinion is contradicted, that opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v.*

*Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830 (citations omitted); *see also* 20 C.F.R. § 404.1527(c)(1)("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you"). "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (citing *Lester,* 81 F.3d at 831). A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. *Lester,* 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001) (citing *Magallanes,* 881 F.2d at 752).

*a. Dr. Krueger*

Dr. Krueger examined plaintiff four times and submitted four psychological evaluations. The ALJ evaluated each opinion separately. *See* AR. 544-45. Plaintiff only challenges three of the opinions.

In April 2012, Dr. Krueger examined plaintiff. AR. 276. He observed that plaintiff appeared depressed, avoidant, isolated, and lacking in confidence. AR. 276. He stated that vocational training would minimize or eliminate barriers to employment. AR. 277. Dr. Krueger estimated that plaintiff's symptoms would last nine months. AR. 277. He stated that "work would seem good for her, not clear why she is so hesitant to return[.]" AR. 277. Dr. Krueger

summarized that plaintiff lacked "enough daily structure, self-confidence, adequate motivation to be able to sustain a normal workday[.]" AR. 277.

The ALJ gave limited weight to Dr. Krueger's April 2012 opinion. AR. 544-45. As a contradicted examining physician's opinion, the ALJ must give specific, legitimate reasons supported by substantial evidence in the record for the weight given. *Lester*, 81 F.3d at 830-31.

The ALJ stated that the opinion was somewhat consistent with the longitudinal record and Dr. Krueger's own treatment notes, as well as plaintiff's testimony. AR. 544. However, the ALJ discounted the part of the opinion that noted plaintiff's symptoms would only last nine months. AR. 544. The ALJ noted that the longitudinal record showed that plaintiff's symptoms would last a minimum of twelve months. AR. 544.

The ALJ noted several inconsistencies between Dr. Krueger's April 2012 opinion and the longitudinal record. For instance, he noted that while Dr. Krueger opined that plaintiff's symptoms would prevent her from sustaining a normal workday, he also gave the opinion that work would be good for her, and that with improved treatment he expected that she could return to her past work. AR. 545 (citing AR. 277-78). The ALJ also noted that the longitudinal record did show improvement in plaintiff's depression (citing AR. 289, 293, 298, 308, noting that plaintiff's PHQ-9 depressions scale reduced from 18/27 to 10/27 showing mild-moderate depression), and that plaintiff was able to work part time and stopped working for reasons unrelated to her impairments (citing AR. 828). AR. 545. This is a specific and legitimate reason to discount the opinion. Determining whether or not inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within [the ALJ's] responsibility." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999)).

Dr. Krueger examined plaintiff again in December 2012 and found that plaintiff would have severe limitations in completing a normal workday and work week without interruptions from psychologically based symptoms. AR. 831. He found that she would have marked limitations in maintaining a schedule, attendance, and punctuality, adapting to changes in a work setting, and communicating effectively in a work setting. AR. 830-31. He found moderate to mild limitations in other areas. AR. 830-831.

The ALJ assigned little weight to Dr. Krueger's December 2012 opinion. AR. 545. The ALJ noted that Dr. Kreuger again noted that plaintiff's symptoms would only last nine months, where the longitudinal record showed plaintiff's symptoms lasted beyond twelve months. AR. 545. The ALJ again noted inconsistencies within Dr. Krueger's opinion. Dr. Kreuger noted that plaintiff succeeded in working and wondered why she did not continue to look for other work. AR. 831. Dr. Krueger noted that if she was able to do well at that job, she would not likely be precluded from other work. The ALJ is permitted to draw logical inferences from the record. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (citing *Beane v. Richardson*, 457 F.2d 758 (9th Cir. 1972). Here, the inference is that Dr. Kreuger believes plaintiff is capable of working, which is inconsistent with marked and severe limitations. Finally, the ALJ noted that he is relying more heavily on the opinions of Dr. Lewis for reasons discussed below. AR. 545. Therefore, the ALJ provided specific, legitimate reasons for assigning little weight to Dr. Kreuger's December 2012 opinion.

Dr. Kreuger evaluated plaintiff again in October 2013. Again, he found that plaintiff would have severe limitations in completing a normal workday and work week without interruptions from psychologically based symptoms, and marked limitations in maintaining a

schedule, attendance, and punctuality, adapting to changes in a work setting, and communicating effectively in a work setting. AR. 845.

The ALJ stated that he assigned little weight to Dr. Kreuger's October 2013 opinion because he "relies more heavily on the remaining opinions of Dr. Lewis and the opinion of Dr. Wheeler as they are more consistent with the longitudinal record." AR. 546. Standing alone, this is conclusory, and not a specific, legitimate reason. However, the ALJ dedicated two full pages of the decision to evaluating all of Dr. Krueger's opinions. He gave specific and legitimate reasons for his assignment of weight to the other opinions. The Ninth Circuit has noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). Here, Dr. Kreuger's opinions are weighed against at least nine other medical opinions in the record.

In sum, the ALJ's reasons for his assignment of weight to Dr. Kreuger's opinions are supported by substantial evidence. If the evidence "is susceptible to more than one rational interpretation," including one that supports the decision of the Commissioner, the Commissioner's conclusion "must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citing *Morgan,* 169 F.3d at 599, 601).

   *b. Dr. Lewis*

Dr. Lewis examined plaintiff three times and submitted three psychological opinions. *See* AR. 408, 429, 836. The ALJ assigned significant weight to this opinion. AR. 548. However, he discounted the portion of Dr. Lewis's opinion regarding plaintiff's attendance. AR. 548.

Plaintiff asserts that the ALJ mischaracterized Dr. Lewis's opinions. Dkt. 13, p. 6-7. Plaintiff states that the ALJ should have found that Dr. Lewis's opinion regarding plaintiff's

"depression would prevent acceptable levels of attendance." Dkt. 13, p. 6 (citing to AR. 414). The citation plaintiff references states "her attendance might be less than ideal as she sometimes 'gives in' to her depression and stays in bed all day." AR. 414. It is unclear why plaintiff believes that "might be less than ideal" indicates that plaintiff's attendance would be unacceptable. The ALJ addressed this point of Dr. Lewis's assessment and stated that is was not supported by the longitudinal record, and that it appeared to be based on plaintiff's self-reports that she prefers to stay in bed some days. AR. 548. The ALJ also noted that plaintiff's testimony has been undermined. Plaintiff's symptom testimony is discussed further in section three below. Plaintiff fails to offer any legal argument or basis for her assertion and instead seeks to offer an additional interpretation of the evidence. As stated above, the court will not reweigh the evidence—where the ALJ's decision is supported by substantial evidence, it will be upheld. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). The ALJ is responsible for resolving ambiguities and conflicts in the medical evidence. *Reddick*, 157 F.3d at 722. Therefore, the ALJ's assessment of Dr. Lewis's opinion is based on substantial evidence.

  *c.*  Dr. Weiss

  Plaintiff asserts that the ALJ erred in assigning little weight to Dr. Weiss's opinion. Dkt. 13, p. 7. Dr. Weiss opined that plaintiff had severe limitations in two functional areas. AR. 859. The ALJ gave little weight to the opinion because it is "not consistent with or supported by the longitudinal record, including evidence received at the hearing level[.]" AR. 546. Plaintiff states that Dr. Weiss's opinion is "based on his independent clinical findings, and it is consistent with many other psychologists' opinions in the record." Dkt. 13, p. 7. Once again, where the evidence "is susceptible to more than one rational interpretation," including one that supports the decision of the Commissioner, the Commissioner's conclusion "must be upheld." *Thomas,* 278 F.3d at

954.  Here, plaintiff merely disagrees with the ALJ's opinion without offering legal argument or evidence in support of his assertion.

> ### d.  Dr. Normoyle

Plaintiff asserts that the ALJ erred in giving little weight to Dr. Normoyle's opinion. Dkt. 13, p. 7. The ALJ gave little weight to the opinion because Dr. Normoyle stated that he saw plaintiff from 2011 through 2015, and then again from 2016 to 2017, yet "the record reveals that Dr. Normoyle only treated claimant from August 2011 through October 2013 and has not treated claimant since 2013." AR. 546. The ALJ also states that the treatment notes in the record do not provide a basis for reopening plaintiff's prior claim, as plaintiff suggests, because the note states that plaintiff's "[a]ctive SSI application is impediment to behavioral changes."  AR. 511, 546.

Plaintiff's argues that:

> Although the record does appear to be missing some of Dr. Normoyle's treatment notes, the ALJ has no basis for accusing Dr. Normoyle of lying about the treatment he has provided to Owen. And contrary to the ALJ's assertion, the record does indeed include treatment notes from Dr. Normoyle from 2014 and 2015.

Dkt. 13, p. 8 (citing to AR. 1124-25, 1139-40). Plaintiff does not state how the two additional treatment notes show that the ALJ's decision to discount the opinion is not supported by substantial evidence, and offers no legal argument regarding why the opinion should be given additional weight. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) ("The burden is on the party claiming error to demonstrate not only the error, but also that it affected his 'substantial rights.'"); *Carmickle, v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the court will not consider an issue that a plaintiff fails to argue "with any specificity in his briefing").

*e. Dr. Carter*

Dr. Carter examined plaintiff once, reviewed some of plaintiff's records, and submitted a mental evaluation. AR. 788. Dr. Carter found that plaintiff would have severe impairments in immediate and remote memory, her ability to interact with coworkers and the public, maintain regular attendance, complete a normal workday without interruption from her symptoms, and deal with workplace stress around others. AR. 793.

The ALJ assigned little weight to the opinion because plaintiff misinformed the examiner that plaintiff had poor grades in high school "but failed to mention that she had been taking college courses by that time and testified to getting A's and B's in her college courses." AR. 546 (citing AR. 790). It is unclear why the ALJ stated that plaintiff failed to mention her college courses, because plaintiff reported to the examiner that "she is in college studying accounting, but is currently taking a break until July because she feels 'overwhelmed.'" AR. 792. The ALJ made a note that plaintiff had accurately reported that she was enrolled in college courses in August 2016 (citing AR. 950), yet Dr. Carter's evaluation took place in May 2017. AR. 788. Moreover, plaintiff's hearing took place in October 2017. Therefore, it is not necessarily inconsistent for plaintiff to have been overwhelmed during one semester and getting A's and B's in another semester. This is not a legitimate reason to discount the opinion.

However, the ALJ gave additional valid reasons for discounting Dr. Carter's opinion. The ALJ stated that the opinion is based on plaintiff's subjective reports. AR. 547. The first page of the report states that "[u]nless otherwise stated, all historical information in this evaluation is based on the claimant's statements during the examination." AR. 788. Indeed, nearly every paragraph begins with "claimant reports that…" *See generally* AR. 788-93. The mental status examination similarly begins each paragraph with "claimant reports…" *See* AR. 790-792.

Although generally, a mental status examination is considered an objective test (*See Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989)), in this particular case, it is clear that even the MSE was based to a large extent on plaintiff's self-reports, which were properly discounted by the ALJ.

According to the Ninth Circuit, "[an] ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citing *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989))). This situation is distinguishable from one in which the doctor provides his or her own observations in support of his or her assessments and opinions. *See Ryan v.Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) ("an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations"); *see also Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001). According to the Ninth Circuit, "when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008)). Here, Dr. Carter's opinion does objectively appear to be based more heavily on plaintiff's self-reports, which, as discussed in further detail below, the ALJ has also found to be undermined by inconsistent statements.

The ALJ also noted that although plaintiff performed poorly on the memory portion of the mental status examination, that result was inconsistent with the longitudinal record and made

reference to multiple places in the record where plaintiff demonstrated normal memory. AR. 547. In determining whether or not substantial evidence supports the findings by the ALJ, the Court should "review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes,* 881 F.2d at 750). Here, although the ALJ erred by stating that plaintiff did not report her college courses to Dr. Carter, substantial evidence supports the ALJ's decision to afford the opinion little weight.

   *f.   Dr. Wheeler*

   Dr. Wheeler examined plaintiff and submitted a psychological evaluation. AR. 950. Plaintiff asserts that the ALJ erred in assigning great weight to Dr. Wheeler's opinion but failed to include all limitations in the RFC. Dkt. 13, p. 10. The specific limitations plaintiff contends should have been included in the RFC are a marked limitation to setting realistic goals and plan independently, and moderate limitations to adapting to changes, communicating and performing effectively, and completing a normal workday and workweek without interruptions from psychologically based symptoms. Dkt. 13, p. 10; *see* AR. 952.

   It is unclear why plaintiff contends that there is no RFC limitation to goal setting and planning independently because the ALJ clearly addressed this in the RFC stating that plaintiff is capable of work "that does not require goal setting or independent planning." AR. 540.  The ALJ also limited plaintiff to simple, routine tasks, and working away from the general public. AR. 540. Additionally, plaintiff does not cite to any authority that the ALJ is required to incorporate every moderate limitation into the RFC. The Ninth Circuit has held that an ALJ adequately captures moderate limitations where the assessment is consistent with the medical source's

narrative testimony. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008) (citations omitted).

Here, Dr. Wheeler stated in the narrative portion of the assessment that plaintiff "[c]ites physical complaints as being the reason her last job ended, so unclear if she's truly incapacitated from working less physical jobs. . . . Not seeing a compelling mental illness that bars working." AR. 953. Thus, it appears clear that Dr. Wheeler believed plaintiff was capable of working despite the moderate limitations she opined to. Accordingly, the ALJ's treatment of Dr. Wheeler's evaluation is based on substantial evidence.

g. *Dr. Sylwester*

Dr. Sylwester examined plaintiff and submitted a physical evaluation regarding plaintiff's ability to sit, stand, and walk. AR. 785. The ALJ assigned great weight to the opinion, with the exception of the opinion that plaintiff should not work around pulmonary irritants. AR. 549.

Plaintiff alleges that the ALJ erred "by failing to fully incorporate these limitations into his residual functional capacity[,]" but does not challenge the weight assigned to Dr. Sylwester's opinion. Dkt. 13, p. 10.

The ALJ stated that "even if [plaintiff] were as limited as Dr. Sylwester [sic] opined, she could still persist at the sedentary level jobs identified by the vocational expert at the first hearing as well as sedentary jobs in general . . . ." AR. 549. Plaintiff again fails to demonstrate that the ALJ has committed legal error, and if so, how it affects the outcome of the case. *Ludwig v. Astrue*, 681 F.3d at 1054; *see also Molina v. Astrue*, 674 F.3d 1104, 1118 (9th Cir. 2012) (the Court must review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'" (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009).

*h. Nurses Lucas and Hamlin*

Nurses Lucas submitted medical opinions stating that plaintiff has limitations in her ability to stand. AR. 812. The ALJ assigned limited weight to Nurse Lucas's opinion because she stated that the limitations would only last three to six months. AR. 549-50. Plaintiff asserts that the ALJ erred because "more recent evidence shows that [plaintiff's] limitations persisted for many years." Dkt. 13, p. 10. However, plaintiff does not state which evidence supports her assertion, and makes no legal argument.

Nurse Hamlin performed an evaluation of plaintiff's range of motion stated that plaintiff was unable to perform sedentary work, yet plaintiff does not cite to where this statement is located in the record. The ALJ assigned little weight to this opinion because it was not consistent with or supported by the longitudinal record. AR. 550. The ALJ further noted that Nurse Hamlin stated that plaintiff's mental health caused the most significant limitations and that she had moderate physical limitations. AR. 550. Plaintiff asserts that the ALJ erred because "this evidence is actually fully consistent with the longitudinal evidence, and Ms. Hamlin's opinion was based on her objective findings." Dkt. 13, p. 10. Plaintiff merely states that the ALJ erred and presents no legal argument. As discussed above, this Court reviews the ALJ decision for legal error and substantial evidence and will not reweigh evidence. *See Bayliss*, 427 F.3d at 1214 n.1; *Reddick*, 157 F.3d at 722; *Thomas*, 278 F.3d at 954.

*i. Dr. Leinenbach*

Dr. Leinenbach reviewed plaintiff's records, examined plaintiff, and found that she had physical limitations consistent with a medium exertional capacity. AR. 426. The ALJ assigned great weight to this opinion. AR. 550. Plaintiff states that the ALJ erred because the longitudinal record, which includes records that Dr. Leinenback did not review, showed that plaintiff had

greater limitations in her ability to stand and walk and use an assistive device. Dkt. 13, p. 11.

First, plaintiff does not cite to the record to demonstrate the additional limitations, but merely

mentions the names of other doctors and alleges that they are entitled to greater weight than Dr.

Leinenbach. Thus, he makes no argument of legal error, and the Court will not reweigh the

evidence. *Thomas*, 278 F.3d at 954. Moreover, the ALJ states that he included greater limitations

than Dr. Leinenbach opined to and limited plaintiff to the light exertional capacity. AR. 550.

Therefore, the ALJs treatment of Dr. Leinenback is based on substantial evidence.

> *j.   Other Medical Evidence*

Plaintiff also cites to many places in the record that support plaintiff's testimony. *See*

Dkt. 13, p. 11-14. However, as stated above, the Court will not reweigh the evidence. Although

the evidence may be susceptible to more than one rational interpretation, the ALJ's decision will

be upheld where it is supported by substantial evidence. *Thomas v. Barnhart*, 278 F.3d 947, 954

(9th Cir. 2002). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

such "'relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (quoting *Davis v.

Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)). Although plaintiff suggests an alternative

outcome based on the evidence, the Court finds that the ALJ's decision is based on substantial

evidence.

### III.   Plaintiff's Symptom Testimony

Plaintiff asserts that the ALJ erred in evaluating plaintiff's symptom testimony. If the

medical evidence in the record is not conclusive, sole responsibility for resolving conflicting

testimony and analyzing a claimant's testimony regarding limitations lies with the ALJ. *Sample

v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (citing *Waters v. Gardner*, 452 F.2d 855, 858 n.7

(9th Cir. 1971) (*Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)). An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (citing 42 U.S.C. § 423(d)(5)(A). Even if a claimant "has an ailment reasonably expected to produce *some* pain; many medical conditions produce pain not severe enough to preclude gainful employment." *Fair,* 885 F.2d at 603. The ALJ may "draw inferences logically flowing from the evidence." *Sample,* 694 F.2d at 642 (citing *Beane v. Richardson*, 457 F.2d 758 (9th Cir. 1972). If an ALJ rejects the testimony of a claimant once an underlying impairment has been established, the ALJ must support the rejection "by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993))

An ALJ may discredit a plaintiff's testimony when it contradicts evidence in the medical record. *See Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir. 1995). Here, the ALJ noted multiple instances where plaintiff made statements to providers that were inconsistent with her hearing testimony. For example, plaintiff testified that her job as a cashier ended because she took too many breaks due to her back pain. AR. 48-49. However, the ALJ noted that she reported to a psychological examiner that she had been "doing great" at the job and was fired because she did not pick up an extra shift when requested. AR. 543 (citing to AR. 828). Leaving work for reasons other than medical impairments can be a valid reason for rejecting a plaintiff's symptom testimony. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (affirming the ALJ where he determined rejected a claimant's subjective complaints because he was laid off rather than injured). In another example, the ALJ noted that plaintiff testified that her psychiatric medications were only somewhat helpful, yet reported to her treating provider that they were

very helpful, calmed her down, and reduced the frequency of her crying spells. AR. 543 (citing to AR. 432, 932).

The ALJ has provided additional reasons for rejecting plaintiff's symptom testimony. However, the Ninth Circuit has stated that "several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). The Ninth Circuit noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case." *Id.* Therefore, because the ALJ provided at least one valid reason for rejecting plaintiff's symptom testimony, any invalid reasons are harmless error.

## IV. RFC and Step-Five Findings

Plaintiff asserts that the RFC and step-five findings are erroneous because the ALJ did not "include all of the limitations described by" the doctors discussed in section two above. Dkt. 13, p. 17-18. However, this Court determined that the ALJ did not err in his assignment of weight to those medical sources. Therefore, the ALJ's RFC assessment is based on substantial evidence. *See* 20 C.F.R. § 416.946(c) (stating that the ALJ is responsible for assessing the residual functional capacity).

//

//

//

//

//

<u>CONCLUSION</u>

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

**JUDGMENT** should be for **DEFENDANT** and the case should be closed.

Dated this 13th day of June, 2019.

J. Richard Creatura
United States Magistrate Judge